

FILED

Dec 30 2016, 5:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEES |
|---|---|
| Mark J. Crandley | Linda George |
| Barnes & Thornburg LLP | Kathleen A. Farinas |
| Indianapolis, Indiana | Todd Barnes |
|  | Sarah Broderick |
|  | George & Farinas, LLP |
|  | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dalton Corporation, | December 30, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1604-MI-836 |
| v. | Appeal from the Marion Superior Court |
| Larry Myers and Loa Myers, | The Honorable Timothy W. Oakes, Judge |
| *Appellees-Plaintiffs.* | Trial Court Cause No. 49D02-1405-MI-14372 |

**Robb, Judge.**

# Case Summary and Issue

[1] Dalton Corporation ("Dalton") appeals the trial court's denial of its motion to set aside a default judgment, raising two issues for our review, which we consolidate and restate as whether the trial court abused its discretion in denying Dalton's motion. Concluding the trial court did not abuse its discretion in denying Dalton's motion to set aside default judgment, we affirm.

# Facts and Procedural History

[2] Neenah Enterprises, Inc. ("NEI") is Dalton's parent company. NEI's general counsel monitors and manages legal matters for NEI's subsidiaries, including Dalton.[1] In 2013, Robert Gitter was employed by NEI as the corporate controller, designating him as NEI's contact for receipt of service with Dalton's registered agent in Indiana, Corporation Service Company ("CSC"). Up until 2013, CSC transmitted service to NEI and its subsidiaries by certified mail. In 2013, however, CSC began providing service to NEI and its subsidiaries via e-mail and Gitter did not inform NEI's general counsel of this change. In late 2013, NEI hired John Laskey as its corporate controller and Gitter notified CSC of this change. During this transition, Gitter failed to inform Laskey that CSC only sent notice of service by e-mail and Laskey would be the only individual receiving e-mails from CSC.

---

[1] Dalton does not have its own in-house counsel.

[3]     On April 30, 2014, Larry Myers and his wife, Loa, filed a complaint against numerous product manufacturers and landowners, including Dalton, alleging negligence. The Myerses served CSC and CSC forwarded notice of the lawsuit to Laskey via e-mail. Laskey did not forward notice of the lawsuit to NEI's general counsel and Dalton did not file an appearance or any responsive pleadings. On September 24, 2014, the Myerses filed a Motion for Default Judgment and served Dalton with the motion via CSC. On October 3, 2014, the trial court granted the motion and entered default judgment against Dalton. Counsel for the Myerses then sent a letter and a copy of the trial court's order to CSC.

[4]     Over fourteen months later, NEI received a paper copy of the service list from another defendant's pleading in this cause and realized the Myerses named Dalton as a defendant. After looking into the matter, Dalton filed an appearance and a Motion for Relief from Default Judgment on December 23, 2015. Specifically, Dalton sought equitable relief from the judgment pursuant to Indiana Trial Rule 60(B)(8), claiming a meritorious defense and listing equitable considerations it contends support setting aside the default judgment, including the "confluence of circumstances" leading to default. Appellant's Appendix at 137. Following a hearing on the motion, the trial court issued an order denying Dalton's motion, reasoning Dalton's Rule 60(B)(8) motion sounded in a Rule 60(B)(1) motion and was thus time-barred. Notwithstanding this conclusion, the trial court further concluded the circumstances leading to

default—coupled with each party's equitable considerations—did not justify granting Dalton equitable relief under Rule 60(B)(8). This appeal ensued.

# Discussion and Decision

## A. Standard of Review

The decision whether to set aside a default judgment is given substantial deference on appeal. Our standard of review is limited to determining whether the trial court abused its discretion. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. . . . A cautious approach to the grant of motions for default judgment is warranted in "cases involving material issues of fact, substantial amounts of money, or weighty policy determinations." In addition, the trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. Furthermore, reviewing the decision of the trial court, we will not reweigh the evidence or substitute our judgment for that of the trial court. Upon a motion for relief from a default judgment, the burden is on the movant to show sufficient grounds for relief under Indiana Trial Rule 60(B).

*Huntington Nat. Bank v. Car-X Assoc. Corp.*, 39 N.E.3d 652, 655 (Ind. 2015) (alterations in original) (citations omitted).

## B. Trial Rule 60(B)(8)

Trial Rule 55(A) authorizes a trial court to enter default judgment against a party for failure to file a responsive pleading. Once a default judgment is entered, the defaulting party may seek to have the judgment set aside in

accordance with Trial Rule 60(B). Ind. Trial R. 55(C). Rule 60(B) provides, in relevant part,

> On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:
>
> (1) mistake, surprise, or excusable neglect;
> * * *
> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).
>
> The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.

Indiana courts have long discussed the difference between Rule 60(B)(1) and Rule 60(B)(8):

> The trial court's residual powers under subsection (8) may only be invoked upon a showing of *exceptional circumstances* justifying extraordinary relief. Among other things, exceptional circumstances do not include mistake, surprise, or excusable neglect, which are set out in T.R. 60(B)(1). In this respect, we have explained: "T.R. 60(B)(8)[,] is an omnibus provision which gives broad equitable power to the trial court in the exercise of its discretion . . . . Nevertheless, under T.R. 60(B)(8), the party seeking relief from the judgment must show that its failure to act was not merely due to an omission involving the mistake, surprise, or excusable neglect. Rather some extraordinary circumstances must be demonstrated affirmatively. This

> circumstance must be other than those circumstances
> enumerated in the preceding subsections of T.R. 60(B)."

*Brimhall v. Brewster*, 864 N.E.2d 1148, 1153 (Ind. Ct. App. 2007) (emphasis added) (quoting *Ind. Ins. Co. v. Ins. Co. of N. Am.*, 734 N.E.2d 276, 279-80 (Ind. Ct. App. 2000), *trans. denied*), *trans. denied*. Thus, in order to prevail under Rule 60(B)(8), the movant must 1) allege sufficient grounds showing exceptional circumstances justify relief from the operation of the judgment other than those set forth in Rule 60(B)(1)-(4), 2) allege a meritorious defense, and 3) file the motion within a reasonable time. In determining whether exceptional circumstances warrant setting aside a default judgment, the trial court may also consider the equitable considerations set forth by each party. *See Huntington*, 39 N.E.3d at 658-59 (remanding to the trial court to evaluate the defaulting party's equitable considerations under Rule 60(B)(8), including the party's valid meritorious defense, substantial interest in the real estate through its mortgage, "excusable reason" for untimely responding, quick action to set aside the default judgment, significant loss if the default judgment is not set aside, and minimal prejudice to the opposing party should the case be reinstated). Despite the numerous arguments raised by each party on appeal, we need only address whether the trial court erred in concluding Dalton did not present exceptional circumstances justifying equitable relief under Rule 60(B)(8).[2]

---

[2] We note both parties dedicate much of their briefs to arguing whether the trial court erred in interpreting Dalton's motion as a request for relief under Rule 60(B)(1) instead of under Rule 60(B)(8) and both parties acknowledge Dalton cannot prevail under Rule 60(B)(1) because it did not file its motion to set aside the

At the outset, we interpret Dalton's argument as an invitation for this court to reweigh the evidence and substitute our judgment for the trial court's judgment, which we will not do. *See id.* at 655. In any event, we note the circumstances leading to Dalton's default judgment were due entirely to a breakdown of communication between *only* those who work for Dalton and NEI; CSC properly forwarded service and no other parties outside of Dalton and NEI are responsible for Dalton's failure to appear and timely file any responsive pleadings. The circumstances are not exceptional, and consistent with the trial court, we are not persuaded the remaining equitable considerations noted by Dalton justify setting aside the default judgment.[3] The trial court did not err in

default judgment within one year of the entry of the default. *See* Ind. Trial Rule 60(B). Stated differently, the parties dispute whether Dalton is attempting to, and can, re-couch the factual scenario presented in this case as a Rule 60(B)(8) motion instead of a Rule 60(B)(1) motion. Regardless of the trial court's conclusion that Dalton's motion properly falls under Rule 60(B)(1) thereby time-barring Dalton from seeking relief from the default judgment, we note the trial court still addressed the merits of Dalton's claim under Rule 60(B)(8), considered Dalton's equitable considerations and argument that the events leading to default were exceptional circumstances, and concluded Dalton did not present any exceptional circumstances justifying equitable relief. Given our ultimate conclusion the trial court did not abuse its discretion in denying Dalton equitable relief under Rule 60(B)(8), we find it unnecessary to determine whether the trial court erred in interpreting Dalton's motion as a request for relief under Rule 60(B)(1).

[3] In its motion for relief from the default judgment and at a hearing on the matter, Dalton notes two equitable considerations it contends support setting aside the default judgment: 1) the allegation the Myerses' claims have failed against most other defendants, and 2) the lack of prejudice suffered by the Myerses if the case were to be reinstated. In response to the first consideration, we simply note the fact the Myerses' claims have failed against some defendants is not dispositive of whether Dalton is liable for Larry's injuries and such an argument is best addressed under a meritorious defense analysis, an analysis we deem unnecessary for purposes of this appeal. *See infra* note 4. As to the lack of prejudice, we agree with the Myerses' assertions that they would suffer some prejudice if the case were to be reinstated, given the fact the Myerses have gone through much of the pre-trial phase with those defendants not in default and the fact the Myerses' case against Dalton is still in its infancy. However, even assuming the Myerses would not suffer prejudice if the case is reinstated, this *sole* equitable consideration, coupled with no exceptional circumstances warranting relief, is insufficient for us to conclude the trial court abused its discretion in denying Dalton relief from the default judgment.

concluding Dalton did not present exceptional circumstances justifying equitable relief. [4]

[8] In addition, we take this opportunity to further acknowledge the fact our courts favor deciding cases on the merits and prefer attorneys work together prior to one party seeking to hold another in default. *See id.* at 659 (recommending lawyers "pick up a phone and remind [opposing] counsel of an imminent deadline" rather than wait for the opposing party to be in default). However, it does not appear there was any contact between the Myerses' counsel and Dalton's counsel prior to the Myerses filing the complaint. Thus, it is unlikely the Myerses' counsel even knew the identity of Dalton's counsel. In addition, the Myerses properly served Dalton via CSC, and when Dalton neither filed an appearance nor any pleadings, the Myerses still waited nearly three months before filing their motion for default judgment. Because Dalton did not file an appearance, it is likely the Myerses knew only how to contact Dalton via its registered agent, CSC, and the Myerses sent copies of the complaint, motion for default judgment, and the trial court's order granting default judgment to CSC, all of which were forwarded to Dalton. We are therefore hard-pressed to believe the Myerses could have done anything more to put Dalton on notice.

[9] In sum, the trial court properly considered the parties' equitable considerations and concluded Dalton did not present exceptional circumstances to warrant

---

[4] For this reason, we need not determine whether Dalton filed its motion within a reasonable time or alleged a meritorious defense. *See* Ind. Trial R. 60(B).

setting aside the default judgment pursuant to Rule 60(B)(8). We see no error and conclude the trial court did not abuse its discretion in denying Dalton's motion to set aside the default judgment.

# Conclusion

[10] The trial court did not abuse its discretion in denying Dalton's motion to set aside the default judgment. Accordingly, we affirm.

[11] Affirmed.

Mathias, J., and Brown, J., concur.