**FILED**

Dec 07 2018, 8:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



**ATTORNEY FOR APPELLANTS**

Ralph E. Sipes
Anderson, Indiana

**ATTORNEY FOR APPELLEES**

Paul J. Podlejski
Anderson, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Southside Automotive of Anderson, Inc., and David Amadio, | December 7, 2018 |
| *Appellants-Defendants,* | Court of Appeals Case No. 18A-SC-471 |
| v. | Appeal from the Madison Circuit Court |
| Celeste Smith and Byron Swain, | The Honorable Thomas L. Clem, Judge |
| *Appellees-Plaintiffs* | Trial Court Cause No. 48C05-1709-SC-3029 |

**Baker, Judge.**

Southside Automotive of Anderson, Inc. (Southside), and David Amadio appeal the trial court's denial of their motion to set aside a default judgment for Celeste Smith and Byron Swain. Finding that the default judgment should have been set aside, we reverse and remand for further proceedings.[1]

# Facts

In late May 2017, Smith and Swain went to Southside to look for a car. They became very interested in a 2007 BMW 530xi. The two spoke with Amadio, the president of the company, about the car's condition. Amadio claimed that "the car was in mint condition . . . a rare find . . . [and] it appeared to be in good shape." Tr. Vol. II p. 11. Relying upon Amadio's advice, on June 2, 2017, Smith and Swain purchased the BMW "as-is" for $7,490 with all fees included. Smith and Swain agreed to pay $4,000 immediately as a down payment and to return on June 5, 2017, to pay an additional $2,500. Thereafter, they would pay the remaining $990 in two monthly installments of $495.

One day later, immediately after picking up the BMW, Smith and Swain started having problems with it. The car started "knocking" and "backfiring" quite loudly, *id*. at 13, so Smith called Amadio to inform him about the issues. Amadio assured Smith that he had an excellent mechanic who would fix any

---

[1] Because of our disposition, we are not analyzing the amount awarded or the appropriateness of allowing the car to remain with Smith and Swain.

minor problems the car might have. The two dropped the car off at Southside to have it fixed.

[4] Smith and Swain did not hear from Amadio for another three weeks before they called him again. Amadio said the repairs were not complete and that he would need more time. Finally, after nearly three months, on August 28, 2017, Smith and Swain picked up the car. The next day, the two experienced even more problems. The BMW "almost caught fire," "it began smoking," and "the [check] engine light came on." *Id*. at 17. On September 1, 2017, Smith and Swain took the car to Resf Motors, a BMW certified service center, to get a proper diagnosis. Resf Motors informed the couple that the necessary repairs would cost $1,927. Amadio refused to cover those costs.

[5] On September 13, 2017, Smith and Swain filed a small claims suit against Southside and Amadio, arguing that they sold a car they falsely claimed to be in "mint condition," appellants' app. vol. II p. 22; that it took Southside and Amadio almost three months to make repairs; that Smith and Swain were without a vehicle for that entire time; and that even after making repairs, the car continued to malfunction. Smith and Swain sought $6,700 in damages and $107 in court costs. A hearing was set for September 29, 2017.

[6] After receiving notice of this suit, on September 20, 2017, Amadio went to the Madison Circuit Court and asked the court reporter if he or Southside needed legal counsel for the September 29, 2017, hearing. She said, "You don't have to worry about that. He doesn't operate that way. If you need an attorney, he will

tell you." *Id*. at 16. The fact that the court reporter made this statement is not challenged, and the trial court made no finding to the contrary. The next day, Southside and Amadio filed a counterclaim, denying Smith and Swain's small claims allegations and arguing that the two had failed to pay the remaining purchase price ($3,490) or to return the BMW to Southside.[2]

[7]     At the September 29, 2017, hearing, Smith and Swain appeared pro se and Amadio appeared pro se and on behalf of Southside. Though Amadio is the president of Southside, Southside technically failed to appear at the hearing because it was not represented by an attorney. So, while Amadio appeared and spoke for himself, he was not permitted to appear and speak on behalf of Southside. The trial court admonished Amadio, who is not an attorney, for attempting to represent Southside without a law license:

> Okay. Do you know that it's illegal for you to be here today in this capacity?
>
> ***
>
> You can't represent yourself in this type of case okay, because it's against the corporation. . . . So, let's try to do this and let's let plaintiffs talk about their case for a minute and see if we can get somewhere[.]

Tr. Vol. II p. 5-6.

---

[2] At this point, Smith and Swain had only paid the initial $4,000 down payment.

[8] Amadio explained what the court reporter had told him about not needing legal counsel for a small claims proceeding:

> [W]hen I tried to reach you to find out about procedural . . . aspects and I explained to [the court reporter] what my question concerning whether [sic] had to have an attorney, she said that . . . the whole goal was to keep costs down that that . . . if I need . . . to have one, you would let me know.

*Id.*

[9] Smith and Swain spoke at length about the incident without interruption or pause. Amadio only spoke for a short amount of time and could not refute any of Smith or Swain's statements made against him. The trial court allowed Amadio to speak only on his own behalf, drastically limiting what he could do. Specifically, Amadio was not allowed to admit evidence or cross-examine Smith and Swain, and the trial court restricted what Amadio could say. Specifically, the court said, at different moments, as follows:

- "[Y]ou wouldn't be able to do that."
- "That's—that's out of bounds."
- "Hang on, stop right there."

*Id.* at 31-33.

[10] Ultimately, Amadio asked if the hearing could be delayed so Southside could obtain proper legal representation, but the trial court stated that it would be unnecessary and too expensive to "correct the matter." *Id.* at 43. After the informal hearing, the trial court entered a default judgment against both Southside and Amadio in favor of Smith and Swain, awarding them $6,000, the

maximum amount permissible under small claims jurisdiction.[3] Appellant's App. Vol. II p. 7. The trial court did not order Smith and Swain to return the BMW to Southside.[4]

[11] On October 27, 2017, Southside and Amadio filed a motion to correct errors and to set aside the September 29, 2017, entry of default judgment, which the trial court denied on January 24, 2018. Southside and Amadio now appeal.

# Discussion and Decision

[12] Southside and Amadio's core argument is that the trial court erred for three reasons, one of which we find dispositive: the default judgment should have been set aside because it was based on Amadio's mistake.

[13] We will reverse a denial of a motion to set aside a default judgment only when the trial court's judgment was clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Whelchel v. Cmty. Hosps.*, 629 N.E.2d 900, 902 (Ind. Ct. App. 1994). On appeal, we give the trial court substantial deference regarding its initial decision to enter a default judgment. *Bennett v. Andry*, 647 N.E.2d 28, 31 (Ind. Ct. App. 1995).

---

[3] *See* Ind. Code § 33-29-2-4(b)(1).

[4] Though we are not analyzing the amount the trial court awarded Smith and Swain, we question the fairness of this apparent double recovery. The two received the maximum amount permissible under small claims jurisdiction and were able to keep the car without having to make the final payments.

[14]  Default judgments are appropriate only when a party has not appeared in person or by counsel. *Smith v. Johnston*, 711 N.E.2d 1259, 1264 (Ind. 1999). Therefore, the default judgment against Amadio was erroneous because he actually did appear at the hearing. To the extent the trial court entered a default judgment against Amadio, it is reversible error. And even if the trial court instead intended to rule against Amadio on the merits, that would also be erroneous because Amadio was not afforded a full opportunity to present his case at the hearing. Therefore, we reverse the judgment against Amadio and remand for a new hearing.

[15]  With respect to Southside, it is undisputed that while Amadio could represent himself in the informal proceeding, he could not represent Southside, a separate entity, because he was not an attorney. Ind. Small Claims Rule 8(c)(3). Amadio argues that he relied to his detriment on the words of the court reporter, who opined that the trial court judge probably would not require Southside to have an attorney. Amadio alleges that this caused his mistaken belief that he could represent both himself and Southside.

[16]  A default judgment may be set aside under Indiana Trial Rule 60(B)(1) for mistake, surprise, or excusable neglect. *Johnston*, 711 N.E.2d at 1264. Although there is no fixed rule or standard for determining what constitutes a mistake, *State v. Mooney*, 51 N.E.3d 281, 284 (Ind. Ct. App. 2016), as a general rule, our courts favor deciding cases on the merits in the face of procedural errors that mistakenly cause attorneys to miss deadlines or lose contact. *Dalton Corp. v. Myers*, 65 N.E.3d 1142, 1146 (Ind. Ct. App. 2016). The burden is on the movant

to establish grounds for Trial Rule 60(B) relief for mistake, surprise, or excusable neglect by affidavit or other evidence. *JK Harris & Co., LLC v. Sandlin*, 942 N.E.2d 875, 881 (Ind. Ct. App. 2011).

[17] While it is clear that Southside should have had an attorney, its failure to retain one stemmed from Amadio's reliance on the court reporter's statement. In our view, Amadio reasonably relied on the information provided by the court reporter and appeared at the hearing, with a mistaken but understandable belief that he could speak on behalf of himself and the company he heads.

[18] When the trial court realized what had happened, it should have continued the hearing so that Southside could retain counsel. Instead, it refused to do so and dramatically restricted what Amadio could and could not say during the hearing, thereby affecting the rights of both Southside and Amadio. Under these circumstances, the trial court erred by denying Southside's motion to set aside the default judgment based on mistake.

[19] In sum, a default judgment should not have been granted against Amadio because he was present. A judgment on the merits could also not have been entered against him because he was not permitted to fully defend himself or prove his counterclaim. As for Southside, the better practice would have been a continuance rather than a default. But having entered the default judgment, the trial court should have later set it aside based on mistake. Both Amadio and Southside are entitled to a new hearing.

The judgment of the trial court is reversed and remanded for further proceedings.

May, J., and Robb, J., concur.